UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


HCC Specialty Underwriters, Inc.

    v.                                     Civil No. 16-cv-501-LM
                                          Opinion No. 2017 DNH 101
John Woodbury et al.


**O R D E R**

Defendant John Woodbury worked for plaintiff HCC Specialty Underwriters, Inc. ("HCC"), a provider of specialized insurance products for the sports and entertainment industries, until June 2016, when he resigned from HCC and immediately joined its competitor, Buttine Underwriters Agency, LLC, d/b/a Prize and Promotion Insurance Services ("PPI"). HCC brings this suit, alleging that it had a non-competition agreement with Woodbury, of which PPI is aware, and that defendants' conduct in the face of that agreement gives rise to several contract and tort claims. Defendants move to dismiss the complaint, arguing that the non-competition agreement is unenforceable and, therefore, HCC fails to allege a plausible claim for relief. HCC objects.

**Standard of Review**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable

inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Ordinarily, the court considers only the well-pleaded facts in the complaint to decide a motion to dismiss under Rule 12(b)(6). Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). In addition, however, the court may consider "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009) (internal quotation marks omitted). The court may also consider matters of public record and documents whose authenticity is not disputed. Global Tower Assets, LLC v. Town of Rome, 810 F.3d 77, 89 (1st Cir. 2016).

**Background**

The complaint asserts the following facts. In 1996, John Woodbury and HCC's predecessor, American Specialty Underwriters,

2

Inc. ("American") entered into an "Employment, Incentive Compensation, Confidentiality and Non-Competition Agreement" (the "Agreement"). Woodbury agreed that he would not disclose any of his employer's confidential information and would not use any confidential information on behalf of any future employer. Woodbury also agreed that during the term of his employment, and for a period of two years following termination of his employment, he would not divert or attempt to divert business from his employer, would not interfere in any material respect with his employer's business relationships, and would not provide services to or have any interest in a person whose activities would violate the non-competition provisions of the Agreement.

Woodbury worked for American or its successors, including HCC, for the next 20 years. In June 2016, Woodbury resigned from HCC, and shortly thereafter, joined PPI. Since his departure, both Woodbury and PPI have engaged in activities that violate the terms of the Agreement, including attempting to divert business from HCC, interfering with HCC's business relationships, and setting up competing facilities. Woodbury also accessed several confidential HCC documents prior to and after his resignation.

## Discussion

HCC brings this suit, alleging claims arising out of the Agreement and its confidentiality and non-competition provisions. Specifically, HCC asserts claims for (1) Specific Performance (Count I); (2) Breach of Contract against Woodbury (Count II); (3) Tortious Interference with a Contract against PPI (Count III); (4) Declaratory Judgment (Count IV); and (5) Violation of the New Hampshire Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. ("RSA") Ch. 358-A (Count V). HCC also seeks attorneys' fees.

Defendants move to dismiss all five counts of the complaint, asserting that the Agreement is unenforceable. They also assert that even if the Agreement is enforceable, the CPA claim (Count V) fails because employment disputes are private in nature and are not, therefore, within the CPA's scope.

### I. Enforceability of the Agreement

Defendants contend that Woodbury's Agreement was made with American, not with HCC, and that HCC is merely an assignee of the Agreement. Defendants assert that as an assignee, HCC cannot enforce the non-competition and confidentiality obligations in the Agreement.

The problem with defendants' argument is two-fold. First, it is far from clear that HCC is an assignee of the Agreement,

as opposed to merely American's legal successor.  The documents
which were attached to the parties' filings show changes of name
in the corporate entities and a merger in 2005 but lack any
indication of an assignment of the Agreement from another entity
to HCC.[1]  A company that becomes the legal successor to another
company by merger is entitled to enforce employment agreements,
including non-competition obligations, that are transferred with
the merger.  [NetScout Sys., Inc. v. Hohenstein](), 1784CV00373BLS2,
2017 WL 1654852, at *2 (Mass. App. Ct. Feb. 23, 2017).

    Second, even if defendants had shown that HCC was an
assignee of the Agreement, they have not shown that this fact
makes the Agreement unenforceable.  In support of their argument
that an assignee lacks authority to enforce confidentiality and
non-compete provisions in an employment agreement, defendants
rely on a decision of the Massachusetts Superior Court that
denied a motion for a preliminary injunction to enforce a non-

---

[1] Both parties rely on documents extrinsic to the complaint to show HCC's corporate history.  Those documents may be considered here without converting the motion to one for summary judgment because the documents are apparently in the public record, none of the parties objects to the evidence provided by the other, and both had the opportunity to support their presentation of corporate structure.  If, however, the issue of enforceability of the Agreement, based on corporate history, were to persist beyond this order, it must be addressed in the evidentiary context of summary judgment.

competition agreement.[2] Securitas Security Servs. USA, Inc. v. Jenkins, No. 032950BLS, 2003 WL 21781385 (Mass. App. Ct. July 18, 2003). The Securitas court noted "some considerable confusion in the record before the Court regarding the corporate interplay" between defendant's original employer and the entity seeking to enforce the non-competition obligation. Id. at *1. The court concluded that plaintiff had not carried its burden of showing a likelihood of success on the merits because defendant contracted with his original employer and that employer could not assign the employment agreement to a subsequent entity that was "a stranger to the original undertaking." Id. at *5.

The Supreme Judicial Court of Massachusetts has not addressed the question of whether non-competition obligations in employment contracts may be assigned to and enforced by a subsequent employer. Defendants cite Securitas as standing for the principal that under Massachusetts law, non-competition obligations in employment contracts are unassignable. No such principal exists under Massachusetts law. Indeed, one year after the Securitas decision, a different Massachusetts Superior Court denied an employer's request for a preliminary injunction because of the lack of governing authority on this precise

---

[2] The parties apparently agree that Massachusetts law applies to the Agreement.

6

issue. See Chiswick, Inc. v. Constas, No. 200400311, 2004 WL 1895044, at *2 (Mass. App. Ct. June 17, 2004). The court in Chiswick also noted the split of authority on the issue in other courts. Id. Therefore, even if HCC were the assignee, defendants have not shown that relevant provisions in the Agreement are legally unenforceable.

Accordingly, for the purposes of the motion to dismiss, defendants have not shown that the non-competition and confidentiality provisions of the Agreement are unenforceable against Woodbury by HCC. Therefore, defendants are not entitled to dismissal of the complaint on that basis.

## II. New Hampshire Consumer Protection Act Claim

Defendants also argue that the CPA claim fails because the CPA does not cover private transactions or disputes between employers and employees and because their actions were "nothing more than normal competition." To determine whether a transaction is personal and therefore not part of trade or commerce covered by the CPA, the court must "'analyze the activity involved, the nature of the transaction, and the parties.'" Rowe v. Condodemetraky, No. 2016-0292, 2017 WL 1367208, at *2 (N.H. Feb. 15, 2017) (quoting Ellis v. Candia Trailers & Snow Equip., 164 N.H. 457, 465 (2012)). "The New Hampshire Supreme Court has not decided whether the Consumer

7

Protection Act applies to employment disputes" although allegations of a mere breach of a contract do not state a claim under the CPA. Campbell v. CGM, LLC, No. 15-cv-088-JD, 2017 WL 78474, at *12 (D.N.H. Jan. 9, 2017) (citing Romano v. Site Acquisitions, Inc., No. 15-cv-384-AJ, 2016 WL 50471, at *3 (D.N.H. Jan. 4, 2016)). To the extent the factual circumstances indicate that Woodbury never intended to honor the non-competition provisions in the Agreement or made misrepresentations "in an ongoing effort to avoid performing under the" Agreement, HCC's CPA claim against Woodbury may be viable. Id. Therefore, the court cannot determine at this early stage whether the employment relationship between HCC and Woodbury would come within the scope of the CPA and whether Woodbury's conduct amounts to something more than a mere breach of the Agreement.

PPI, of course, did not have an employment relationship with HCC. Instead, PPI is a competitor of HCC. HCC alleges that PPI and Woodbury violated the CPA by "improperly targeting HCC Specialty clients, improperly interfering with HCC Specialty's business relationships, and improperly interfering with HCC Specialty's good will with its clients and industry partners." Depending on the nature of those actions and the "rascality" involved, the allegations with inferences taken in

favor of HCC, are enough to avoid dismissal at this early stage of the litigation.  See Barrows v. Boles, 141 N.H. 382, 390 (1996).

## Conclusion

For the foregoing reasons, defendants' motion to dismiss (document no. 11) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 1, 2017

cc:  Nicholas F. Casolaro, Esq.
     Thomas E. Ganucheau, Esq.
     Russell F. Hilliard, Esq.
     Susan Aileen Lowry, Esq.
     Jennifer L. Parent, Esq.
     Joel T. Towner, Esq.