UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

HCC Specialty Underwriters, Inc.

    v.                                                        Civil No. 16-cv-501-LM
                                                                 Opinion No. 2017 DNH 245

John Woodbury, et al.

**O R D E R**

Before the court is a motion to amend the complaint filed by plaintiff HCC Specialty Underwriters, Inc. ("HCC"). See doc. no. 46. In the original complaint, HCC alleges that defendant John Woodbury, a former employee of HCC, violated his 1996 non-compete agreement and misused confidential information while working for defendant Buttine Underwriters Agency, LLC d/b/a Prize and Promotion Insurance Services ("Buttine"), a competitor of HCC. Based upon information it claims to have learned during discovery, HCC seeks to amend the complaint to allege that Woodbury also violated a 2001 release and misappropriated trade secrets. Defendants object and argue that HCC's motion is untimely. For the following reasons, HCC's motion is granted.

**STANDARD OF REVIEW**

Because HCC moves to amend the complaint after the deadline set out in the scheduling order, "the court evaluates [HCC's] request . . . under the Rule 16 'good cause' standard." Ashley

v. Spaulding Youth Ctr., No. 16-cv-37-JL, 2016 WL 5477574, at *5 (D.N.H. Sept. 29, 2016) (emphasis omitted); see also Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The purpose of this standard is to "preserve[] the integrity and effectiveness of Rule 16(b) scheduling orders." O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004); see also Cruz v. Bristol-Myers Squibb Co., PR, Inc., 699 F.3d 563, 570 (1st Cir. 2012) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." (quotation omitted)).

"Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment." O'Connell, 357 F.3d at 155. The question is whether the deadline could not have been reasonably met "despite the diligence of the party seeking the extension." Id. at 154 (quotation omitted). "Prejudice to the opposing party remains relevant but is not the dominant criterion." Id. at 155. As the party seeking leave to amend, HCC bears the burden of establishing good cause. See Forrester Envtl. Servs., Inc. v. Wheelabrator Techs., Inc., No. 10-cv-154-JL, 2012 WL 928080, at *2 (D.N.H. Mar. 19, 2012).

## BACKGROUND

The following facts are taken from the original complaint, unless otherwise noted. HCC is a provider of specialized insurance products, including insurance related to "event cancellation, weather, travel, event liability, prize indemnity, contractual bonus and over-redemption insurance." Doc. no. 1 at ¶ 13. Prior to his resignation in 2016, Woodbury was employed for more than two decades by HCC, or one of its predecessors. Woodbury's work appears to have involved developing and managing client relationships.

The present litigation arises from an employment agreement between Woodbury and a predecessor of HCC, American Specialty Underwriters, Inc. The agreement was executed in 1996 and is titled "Employment, Incentive Compensation, Confidentiality and Non-Competition Agreement" (hereinafter the "1996 Agreement"). Woodbury agreed that, during his employment and for a period of two years following his termination, he would not divert business from his employer, would not "interfere in any material respect with any business relationship between [the employer] and any other person," and would not render services to another whose activities would violate the agreement if performed by Woodbury. Id. at ¶ 16. Woodbury also agreed that he would not

use confidential company information on behalf of any future employer.

Woodbury resigned from HCC in June 2016. Shortly thereafter, he began working for Buttine, which soon launched a new set of insurance products. HCC alleges that these insurance products are "direct competitive offerings to that of HCC," and that Woodbury was hired to develop this area of Buttine's business. Id. at ¶ 25. HCC asserts that, since Woodbury's resignation, defendants have met with reinsurers and clients that have business relationships with HCC. HCC thus alleges that Woodbury is violating the 1996 Agreement by helping Buttine compete against HCC in this niche insurance market.

HCC further alleges that defendants have used or will use HCC's confidential information to compete against HCC. HCC bases this allegation on the fact that Woodbury engaged in unusual activity on his work computer shortly before, and directly after, he tendered his resignation. Specifically, Woodbury accessed information that he had no need to access, including contracts for prior clients, HCC's budget information, and a spreadsheet containing HCC's rates for a certain insurance product. Although HCC did not allege a claim for misappropriation of trade secrets in the original complaint, it did allege

that some of the information Woodbury accessed would constitute trade secrets under state law.

Based on defendants' alleged conduct, HCC brought the present action. In the original complaint, HCC raises claims for specific performance of the 1996 Agreement (Count I); breach of the 1996 Agreement by Woodbury (Count II); tortious interference with the 1996 Agreement by Buttine (Count III); a declaratory judgment that the 1996 Agreement is valid and enforceable (Count IV); and a claim against both defendants under the New Hampshire Consumer Protection Act (Count V).

## DISCUSSION

HCC moves to amend its complaint to add two new claims, as well as additional factual allegations relevant to those claims. HCC asserts that it only recently discovered the information supporting these claims.

The first new claim is for breach of contract. HCC alleges that Woodbury breached a release executed by Woodbury and ASU International, Inc.—another of HCC's predecessors—in 2001 (hereinafter "the 2001 Release"). The 2001 Release was executed as part of a security purchase agreement between ASU International and HCC's parent company, under which HCC's parent company would acquire ASU International's stock. HCC alleges that the 2001 Release reaffirms Woodbury's obligations under the

1996 Agreement not to compete or to use HCC's confidential information, and that Woodbury violated those obligations.[1]

The second new claim is for misappropriation of trade secrets under RSA 350-B, the New Hampshire Uniform Trade Secrets Act ("UTSA"). HCC alleges that, after his resignation, Woodbury retained confidential company information on his personal computer, his wife's computer, his personal email, and his personal cell phone. As HCC details in its motion, this information includes, among other things, a list of HCC client email addresses. HCC contends that its confidential information constitutes trade secrets and that defendants have misappropriated HCC's trade secrets in order to identify potential customers and develop competing insurance products.

Although the deadline for amendments to pleadings was July 31, 2017, HCC did not file its motion until September 26. Thus, Rule 16(b)'s "good cause" standard applies. See Ashley, 2016 WL 5477574, at *5.

HCC argues that, under these circumstances, there is good cause justifying the late amendments. The court considers HCC's two proposed claims below.

---

[1] To account for the alleged breach of the 2001 Release, HCC also moves to expand the facts underlying its original claims for specific performance, declaratory judgment, tortious interference with contract, and violation of the Consumer Protection Act.

6

I.  <u>Breach of 2001 Release</u>

HCC asserts that it discovered the 2001 Release after defendants served their first request for production on July 18. In compiling documents responsive to defendants' request, HCC collected files related to the 2001 security purchase agreement noted above. HCC discovered the 2001 Release attached to that agreement, which HCC produced to defendants on August 8.

HCC argues that, under these circumstances, there is good cause to justify the late amendment adding the claim and allegations relating to the 2001 Release. Although HCC acknowledges that the 2001 Release was in its possession, HCC asserts that its counsel did not discover the Release earlier because the Release was contained in the files of the otherwise unrelated 2001 security purchase agreement. HCC argues that it acted diligently in moving to amend the complaint once it discovered the 2001 Release, and that permitting the amendment will cause no prejudice to defendants.

Defendants disagree. They argue that HCC was not diligent because the 2001 Release has been in HCC's possession long before HCC filed suit. They further claim that they will suffer prejudice if the motion is granted. They assert that in deciding to resign from HCC, Woodbury reviewed and relied on the

contents of his personnel file—which did not include the 2001 Release. Defendants do not dispute that Woodbury signed the Release, but they state that, at the time he resigned, Woodbury had no memory of executing the document.

After weighing the arguments on both sides, the court concludes that, although a close call, HCC has shown sufficient good cause to permit the late amendments relating to the 2001 Release. As set forth above, the predominant factor in the court's analysis is the diligence of the moving party. See O'Connell, 357 F.3d at 154-55. Here, the court is satisfied that HCC acted with diligence. To be sure, the court recognizes that the Release has been in HCC's possession since 2001. Still, the court finds HCC's explanation for its late discovery reasonable. There appears to be no dispute that the late discovery was a good faith oversight on the part of HCC—indeed, defendants acknowledge that Woodbury too did not recall the execution of the Release. More importantly, once the Release was discovered, HCC did not delay in producing the Release to defendants or in seeking the proposed amendments. In short, in finding that HCC acted diligently, the court accords significant weight both to the unusual circumstances presented here—that both parties to the Release had no memory of its execution—as well as to HCC's conduct upon discovery of the Release.

Moreover, the court finds defendants' prejudice argument unpersuasive.  Defendants' primary prejudice argument appears to be related to the potential damage this evidence may do to their case and their litigation strategy.[2]  However, the harm to defendants' case is caused by the mere existence of this evidence rather than HCC's belated discovery of it.  In the context of Rule 16(b), prejudice occurs "when amendments would delay trial, restart a case at an earlier stage, or otherwise unfairly limit a parties [sic] ability to present their case at trial."  Robles v. Archer W. Contractors, LLC, No. 3:14-CV-1306-M, 2015 WL 4979020, at *3 (N.D. Tex. Aug. 19, 2015).  Defendants do not allege this sort of prejudice.

Defendants' argument that the recent discovery of this evidence may alter their trial strategy is not sufficiently persuasive to prohibit HCC's amendment.  Such an event is common to any case where a significant evidentiary discovery causes a litigant to chart a different course.  The claimed prejudice is

---

[2] Defendants also claim that HCC's failure to include a copy of the 2001 Release in Woodbury's personnel file constitutes a violation of Massachusetts state law.  See Mass. Gen. Laws ch. 149, § 52C (2017) (requiring employers to keep complete personnel records of employees).  Even if defendants are correct, defendants have not persuaded the court that such a violation bears on whether there is good cause for the late amendment.

9

especially weak here because Woodbury does not dispute that he executed the 2001 Release.

For these reasons, the court concludes that there is good cause to allow the late amendments relating to the 2001 Release.

II.  Misappropriation of Trade Secrets

With respect to the UTSA claim, HCC argues that it has demonstrated good cause because it acted diligently in filing the motion to amend.  Specifically, HCC states that it first learned through discovery propounded on August 18 that Woodbury retained confidential HCC information on his personal devices after his resignation.

Defendants argue that HCC did not act with diligence because it had a factual basis to raise a UTSA claim when it filed the original complaint, but failed to do so.  As support, defendants point to the factual allegations in the original complaint concerning Woodbury's "abnormal" computer activity, as well as the allegations relating to defendants' use of HCC's confidential information to compete against HCC.

Like defendants' prejudice argument concerning the 2001 Release, defendants also contend that they have made strategic decisions in defending the case based on the claims in the original complaint.  Additionally, defendants argue that the addition of a UTSA claim will prolong the litigation.

The court finds that there is good cause to allow HCC's UTSA claim. With respect to diligence, defendants are correct that there are some factual allegations in the original complaint that could have arguably supported a UTSA claim. Still, in the original complaint, the principal allegation suggesting that Woodbury had taken and used HCC's confidential information was HCC's claim that Woodbury had engaged in "abnormal activity" on his work computer shortly before and directly after his resignation. Doc. no. 1 at ¶ 38. This provides a weaker inference of misappropriation than the information recently disclosed by defendants—that Woodbury continued to maintain confidential HCC information on his personal devices at the time he was developing Buttine's business. Given that difference, the court cannot fault HCC for initially foregoing a less robust claim and waiting until it discovered more plausible evidence suggestive of misappropriation. Further, the court is not inclined to fault HCC where defendants did not produce the new discovery until after the amendment deadline. See Mudge v. Bank of America, N.A., No. 13-cv-421-JD, 2014 WL 2196899, at *3 n.4 (stating that "delay may be justified when it was caused by the opposing party's production of critical information through discovery

after the scheduling deadline"). Looking at HCC's actions as a whole, the court finds that HCC acted diligently.

Nor can the court agree with defendants that the late amendment will cause them prejudice. The UTSA claim arises out of the same operative facts as HCC's original claims. And while the proposed amendment does introduce a new cause of action, the facts and legal issues underlying the UTSA claim are, at bottom, consistent with HCC's original theory of the case—that defendants have used HCC's confidential information to unfairly compete against HCC. In short, the court is not convinced that the current course of the proceedings will be so altered by the proposed amendment that it will prolong the litigation. See White v. One World Techs., Inc., No. 09-10011-NMG, 2011 WL 5513192, at *2 (D. Mass. Nov. 10, 2011) (finding that prejudice resulting from amendment would be "slight," where proposed claim was "fundamentally similar" to current claim and defendants would not need to alter preparation to account for additional claim).

Therefore, as to the amendments relating to the UTSA claim, HCC's motion is granted.

**CONCLUSION**

For the reasons stated herein, HCC's motion to amend the complaint (doc. no. 46) is granted. HCC shall file the first amended complaint as allowed by this order on or before December 6, 2017.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

December 4, 2017

cc: All Counsel of Record